54 F.3d 659
 Jordon PERLMUTTER, individually and as trustee for the Abe
Perlmutter Testamentary Trust; Leland Rudofsky; Gerard
Rudofsky; Harley Rudofsky; Bernstein Investment Co., a
Colorado limited partnership; Morrison Northglenn
Partnership, a Colorado general partnership; Glenn
Investment Partnership, a Colorado General Partnership,
Plaintiffs-Appellants,
v.
UNITED STATES GYPSUM CO., Defendant-Appellee,
and
National Gypsum Company, Defendant.
 No. 94-1187.
 United States Court of Appeals,
Tenth Circuit.
 May 9, 1995.
Rehearing Denied June 13, 1995.
 
 Kenneth B. McClain, Humphrey, Farrington & McClain, Independence, MO (William S. Silverman, Silverman & Riley, Denver, CO, with him on the briefs), for appellants.
 Kell M. Damsgaard, Morgan, Lewis & Bockius, Philadelphia, PA (Peter H. Blair, Jr., Foster & Blair, Denver, CO, with him on the briefs), for appellee.
 Before TACHA and MCWILLIAMS, Circuit Judges, and BURRAGE,* District Judge.
 TACHA, Circuit Judge.
 
 
 1
 Plaintiffs, developers of a shopping mall in Northglenn, Colorado, sued defendant United States Gypsum Company, manufacturer of a plaster product containing asbestos, under several legal theories, including negligence and strict liability. After a jury verdict for plaintiffs on the negligence cause of action, defendants appealed to this court. Because we found error in the district court's jury instructions, we reversed and remanded. Perlmutter v. United States Gypsum Co., 4 F.3d 864, 875 (10th Cir.1993) (Perlmutter I ). On remand, the district court granted defendant summary judgment, which plaintiff now appeals. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 and affirm.
 
 I.
 
 2
 Plaintiffs are developers who built a shopping mall in Northglenn, Colorado, in 1967. Defendant sold plaintiffs an acoustical plaster product for use in construction of the mall's ceiling. The product, which contained asbestos, was sold under the trade name Audicote. At the time plaintiffs purchased the Audicote for the Northglenn Mall, defendant did not label or advertise the product's asbestos content. Over the next twenty years, the Audicote in Northglenn Mall was periodically disturbed when plaintiffs repaired water damage and performed routine maintenance on the ceiling. Plaintiffs claim that asbestos was released into the mall when this work was performed.
 
 
 3
 In 1987, plaintiffs negotiated a sale of the mall. The parties abandoned the proposed transaction, however, when they discovered that the mall contained asbestos. Plaintiffs then removed the asbestos-containing Audicote at a cost of $1.75 million, and subsequently sold the mall to a different purchaser.
 
 
 4
 Plaintiffs then sued defendant to recover the cost of removing the Audicote. Plaintiffs sued for failure to warn of the hazards of Audicote under theories of both strict liability and negligence. A jury found in favor of plaintiffs on the negligence claim but for defendant on the strict liability claim. Both parties appealed that judgment to this court.
 
 
 5
 On appeal, although we affirmed the district court's evidentiary decisions, Perlmutter I, 4 F.3d at 870-71, we reversed the district court on several important issues related to plaintiffs' negligence claim. First, we held that Colorado law imposed on defendant no post-sale duty to warn plaintiffs of Audicote's dangers, because Audicote was not defective at the time that defendant sold it to plaintiffs. Id. at 869-70. Second, we concluded that the district court's refusal to issue jury instructions concerning intervening causes and misuse of product was reversible error. Id. at 872-73. Consequently, we reversed the judgment and remanded the case for a new trial on plaintiffs' negligence claim. Id. at 875.
 
 
 6
 On remand, the district court granted defendant's motion for summary judgment, agreeing with defendant that plaintiffs could not "prove an essential element of the negligence claim--that Audicote created an unreasonable risk of harm as it was applied in the mall in 1967." Plaintiffs then petitioned this court for a writ of mandamus ordering the district court to hold a trial on plaintiffs' negligence claim. We denied plaintiffs' petition, reasoning that plaintiffs could obtain adequate relief through an appeal. Plaintiffs now appeal the summary judgment, arguing (1) that the district court's summary judgment order is inconsistent with our decision in Perlmutter I, and (2) that the district court incorrectly held that a finding that Audicote created an unreasonable risk of harm was an essential element of plaintiffs' negligence claim. In addition, plaintiffs renew their claim for prejudgment interest and punitive damages.II.
 
 
 7
 As a federal court sitting in diversity, "our task ... is to ascertain and apply Colorado law to the end that the result obtained in federal court is the result that would have been reached if this litigation had been pursued in a Colorado court." Lutz Farms v. Asgrow Seed Co., 948 F.2d 638, 641 (10th Cir.1991). We regard the pronouncements of the Supreme Court of Colorado as authoritative statements of Colorado law. Romero v. International Harvester Co., 979 F.2d 1444, 1449 n. 3 (10th Cir.1992). And, although we are not obligated to follow the pronouncements of lower state courts, "in the absence of any compelling reason to disregard [them]," we follow decisions of the Colorado Court of Appeals as well. Id. Our review of the district court's determinations of state law is de novo. Salve Regina College v. Russell, 499 U.S. 225, 239, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991).
 
 
 8
 Although we apply Colorado law to the substantive legal questions in this case, we review the grant of summary judgment using federal standards. See Romero, 979 F.2d at 1449. "We review the grant of summary judgment de novo, using the same standard applied by the district court." Universal Money Ctrs., Inc. v. AT & T, 22 F.3d 1527, 1529 (10th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). Summary judgment is properly granted by a district court when there is no genuine issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In applying this standard, we review the factual record in the light most favorable to the nonmoving party. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990).
 
 III.
 
 9
 Plaintiffs contend that the district court failed to follow our mandate ordering a new trial because it decided the issue on summary judgment. The district court is bound to act in accordance with a mandate from this court. See Hicks v. Gates Rubber Co., 928 F.2d 966, 969 (10th Cir.1991). Nevertheless, "[a] mandate from [an appellate] court ordering a new trial does not preclude the district court from entering summary judgment if all of the appropriate requirements are met." Sales v. State Farm Fire & Casualty Co., 902 F.2d 933, 935 (11th Cir.1990); see also United States v. United States Gypsum Co., 340 U.S. 76, 86, 71 S.Ct. 160, 168, 95 L.Ed. 89 (1950); Cameo Convalescent Ctr., Inc. v. Percy, 800 F.2d 108, 110 (7th Cir.1986). "To decide whether the district court violated [our] mandate, it is necessary to examine the mandate and then look at what the district court did." Hicks, 928 F.2d at 969.
 
 
 10
 In Perlmutter I, we reversed "the trial court's imposition of a post-sale duty to warn upon [defendant]." 4 F.3d at 875. Finding "error in the denial of jury instructions requested by [defendant]," we remanded the case "for a new trial on the question of negligence." Id. In our remand for a new trial on the negligence cause of action, we limited plaintiffs to "proving that, at the time of sale, [defendant] was negligent in the selling of Audicote. The issue will be whether [defendant]'s conduct in the development, design, and marketing of Audicote, prior to 1967, failed to meet the appropriate standard of care." Id. at 870 n. 4. Moreover, because "[t]he jury's verdict on the strict liability cause of action found that Audicote was not a defective, unreasonably dangerous product when sold," our mandate precluded plaintiffs "from arguing that the Audicote was defective under the standards existing before 1967." Id.
 
 
 11
 On remand, the district court analyzed plaintiffs' negligence claim in light of our holding in Perlmutter I that defendant had no duty to warn of risks it learned of subsequent to the sale. The court recognized that defendant may have had a duty to warn persons "who might reasonably be expected to use, consume or be affected by ... Audicote" of any unreasonable risks of harm that defendant was aware of at the time of sale. Such a duty, however, would be predicated on a finding that Audicote created an unreasonable risk of harm. Thus, the court reasoned, "the element of an unreasonable risk of harm was common to" plaintiffs' strict liability and negligence claims. Because the jury found for defendant on this common element--that Audicote was not an unreasonably dangerous product when sold--the court concluded that, "as a matter of law, the plaintiffs cannot prove negligence on a new trial of this case."
 
 
 12
 We conclude that the district court's order is not inconsistent with our decision in Perlmutter I. Plaintiffs' assertion that our decision in Perlmutter I "relie[d] on the belief that no essential element of [plaintiffs'] negligence claim is absent" is simply incorrect. In Perlmutter I, we held that the jury had been improperly instructed on the negligence claim, and therefore remanded the case. 4 F.3d at 875. We did not prescribe the essential elements of plaintiffs' negligence claim. The district court thus properly analyzed defendant's motion for summary judgment.
 
 IV.
 
 13
 Plaintiffs also contend that the district court misconstrued Colorado law to require a finding of product defect in negligent failure to warn claims. As plaintiffs correctly point out, strict liability and negligence are conceptually different theories of product liability. Grasmick v. Otis Elevator Co., 817 F.2d 88, 90 (10th Cir.1987) (applying Colorado law).
 
 
 14
 The difference between negligence and strict liability is the focus of the trier of fact. Under a negligence theory, the reasonableness of the manufacturer's conduct must be determined. Under a strict liability theory, the determination is whether the product is defective, or, if not defective, unreasonably unsafe, and whether ... a warning was required.
 
 
 15
 Downing v. Overhead Door Corp., 707 P.2d 1027, 1032 (Colo.Ct.App.1985); see also Fibreboard Corp. v. Fenton, 845 P.2d 1168, 1174-75 (Colo.1993). "When a manufacturer or seller knows or should know of unreasonable dangers associated with the use of its product [that are] not obvious to product users, it has a duty to warn of these dangers; and a breach of this duty constitutes negligence." Palmer v. A.H. Robins Co., 684 P.2d 187, 198 (Colo.1984). In the context of a negligent failure to warn claim, the manufacturer's duty is to warn of dangers that it knew or should have known of. Grasmick, 817 F.2d at 90.
 
 
 16
 Despite the theoretical differences between the two claims, "Colorado caselaw ... suggests that there need not be a rigid distinction between negligence and strict liability failure to warn concepts." Romero, 979 F.2d at 1452 (referring to Halliburton v. Public Serv. Co., 804 P.2d 213, 217 (Colo.Ct.App.1990), cert. denied, (Jan. 29, 1991) and Downing, 707 P.2d at 1032). "[T]he reasons which impose a duty to warn under [strict liability] also exist where the claim is based on negligence and, generally, the law applicable to warnings under [strict liability] are instructive in negligence cases as well." Halliburton, 804 P.2d at 217. One critical area of overlap is that, "[r]egardless of whether a product liability action is grounded in negligence or strict liability, a plaintiff must prove that the product was defective." Mile Hi Concrete, Inc. v. Matz, 842 P.2d 198, 205 (Colo.1992) (emphasis added). "If a plaintiff fails to present sufficient evidence that a product is defective, he cannot satisfy the burden of persuasion or establish a prima facie case and a court will direct a verdict for the defendant." Id.
 
 
 17
 Here, plaintiff cannot show that Audicote was defective because that issue was conclusively determined in the first trial. See Perlmutter I, 4 F.3d at 870 n. 4. Plaintiffs therefore cannot establish a prima facie case for negligence under Colorado law and the district court properly granted defendant summary judgment.
 
 CONCLUSION
 
 18
 For the reasons stated, we AFFIRM the district court's order granting defendant summary judgment. Consequently, we need not address plaintiffs' claims for prejudgment interest and punitive damages.
 
 
 
 *
 The Honorable Michael Burrage, District Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation