2008 OK CIV APP 65

**David Allen MILLER, Plaintiff/Appellant,**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant/Appellee.**

**No. 104,598.**

Court of Civil Appeals of Oklahoma, Division No. 2.

March 4, 2008.

Rehearing Denied April 25, 2008.

Certiorari Denied June 23, 2008.

Kathryn D. Terry, Kent R. McGuire, Whitten, Nelson, McGuire, Terry & Roselius, Oklahoma City, OK, for Plaintiff/Appellant.

Albert L. Tait, Jr., J. Mark McAlester, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, OK, for Defendant/Appellee.

JOHN F. FISCHER, Judge.

¶ 1 In this action for breach of insurance contract and bad faith, David Allen Miller appeals from the Trial Court's order that summarily adjudicated his bad faith claim in favor of insurer Liberty Mutual Fire Insurance Company.[1] Based on our review of the record on appeal and applicable law, we reverse and remand for further proceedings.

## BACKGROUND FACTS

¶ 2 The facts that resulted in this litigation relate to an April 1999 automobile accident in

---

1. Miller asserted two bases for recovery, breach of contract and bad faith. Subsequent to the Trial Court's summary adjudication of the bad faith issue, Miller dismissed his breach of contract claim, thereby rendering the summary adjudication an appealable judgment. Accordingly, in this Opinion we deal only with the judgment in favor of Liberty Mutual regarding Miller's bad faith claim.

which Miller was injured in a head-on collision. At the time of the accident, Miller was driving a vehicle owned by his employer. The driver of the other vehicle fell asleep at the wheel, crossed the center median and collided with Miller. The negligent driver was uninsured. Liberty Mutual insured Miller's employer and issued the uninsured/underinsured motorist (UM) policy at issue in this case. That policy provides coverage for Miller.

¶ 3 The determinative issues in this appeal are framed by Miller's Third Amended Petition and Liberty Mutual's Answer to that petition. Miller alleged, among other things, that Liberty Mutual failed, without adequate defense, to properly investigate, evaluate and timely pay his valid claim for UM policy benefits. In its answer, Liberty Mutual asserted that Miller's bad faith claim was barred by the statute of limitations and that its actions in evaluating Miller's UM claim and making payment were reasonable and legitimate.

¶ 4 Liberty Mutual sought summary adjudication of Miller's bad faith claim, asserting that there was no basis from which a jury could determine that it had engaged in unreasonable conduct. Liberty Mutual pointed out that it had paid Miller $20,963 in February 2001 for the injuries he suffered and that it conditionally denied Miller's request for additional medical benefits for resumed treatment, which he submitted approximately one and one half years after his initial receipt of medical treatment. Liberty Mutual also pointed out that it denied Miller's request only after having him evaluated by a chiropractor, who concluded that Miller's more recent medical complaints were not caused by the 1999 accident. On this basis, Liberty Mutual argued that it had discharged its duty to investigate Miller's claim and that it was under no duty to pay expenses for medical treatment unrelated to the 1999 accident.

¶ 5 Miller's response focused on Liberty Mutual's initial handling of his claim. In that response, Miller asserted that he had learned only recently through discovery that, on Oc-

tober 11, 2000, Liberty Mutual had evaluated his claim to be worth $15,963 to $30,963. He argued, therefore, that Liberty Mutual's initial $10,000 offer constituted a breach of its duty of good faith, which was not excused by its subsequent payment of $20,963.

¶ 6 Liberty Mutual sought and was granted leave to reply. In its reply, Liberty Mutual argued that the original settlement negotiations in the case, which resulted in the $20,963 payment, occurred more than two years prior to the filing of Miller's suit and any claim based on those negotiations was, therefore, barred by the applicable statute of limitations. See 12 O.S. Supp.2005 § 95(A)(3). Miller requested leave to file a "surreply" to address the statute of limitations argument, but the Trial Court denied his request. Miller claimed in his proposed surreply that Liberty Mutual had waived any statute of limitations argument by failing to include that affirmative defense in its initial answer and, alternatively, that the applicable statute of limitations is subject to the discovery rule, which tolled the statute until Miller learned of Liberty Mutual's "low ball" offer through discovery after the filing of this case.

¶ 7 In a Journal Entry of Judgment filed January 23, 2007, the Trial Court granted Liberty Mutual's motion and dismissed Miller's bad faith claim. Within ten days, Miller filed a motion to reconsider. Miller's motion argued that the "low ball" offer to settle his claim constituted bad faith, that Liberty Mutual waived any statute of limitations argument and that because the statute was tolled until Miller discovered the "low ball" offer, his petition was timely filed.

¶ 8 Liberty Mutual's response to Miller's motion asserted that factual disputes precluded granting the motion. In particular, Liberty Mutual denied that it had made a "low ball" offer to settle Miller's claim and denied that Miller had not discovered the facts supporting his bad faith claim until after the filing of this suit. The Trial Court denied Miller's motion to reconsider on April 3, 2007. Miller appeals.

## STANDARD OF REVIEW

¶ 9 We review a trial court's grant of summary judgment *de novo*. *Carmichael v. Bel-*

*ler,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On review, we examine the pleadings and evidentiary materials submitted by the parties to determine whether there exists a genuine issue of material fact. *Id.* This Court bears "an affirmative duty ... to test for legal sufficiency all evidentiary material received in summary process in support of the relief sought by the movant." *Reeds v. Walker,* 2006 OK 43, ¶ 9, 157 P.3d 100, 106 (footnote omitted). The summary process requires that we determine whether the record reveals undisputed material facts supporting only a single inference that favors the movant's motion for summary judgment. *Copeland v. The Lodge Enters., Inc.,* 2000 OK 36, ¶ 8, 4 P.3d 695, 699. Further, when considering a motion for summary judgment, the evidentiary materials and the inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *Hargrave v. Canadian Valley Elec. Co-op., Inc.,* 1990 OK 43, ¶ 14, 792 P.2d 50, "Only if the court should conclude that there is no material fact in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor." *Copeland,* 2000 OK 36 at ¶ 8, 4 P.3d at 699. We will reverse a grant of summary judgment where it appears from the record that material facts concerning issues raised are conflicting or, if the material facts are undisputed, that reasonable persons in the exercise of fair and impartial judgment might reach different conclusions from those facts. *See Buck's Sporting Goods, Inc. of Tulsa v. First Nat'l Bank & Trust Co. of Tulsa,* 1994 OK 14, ¶ 11, 868 P.2d 693, 697–98.

■ ¶ 10 In this case, Miller appeals from the order granting summary judgment to Liberty Mutual as well as from the Trial Court's denial of his Motion to Reconsider. Although "motions to reconsider" are not technically authorized by Oklahoma procedural law, *McMillian v. Holcomb,* 1995 OK 117, n. 3, 907 P.2d 1034, 1036 n. 3, a court is required to treat a motion as the substance of the motion dictates regardless of the name assigned by the parties. *Horizons, Inc. v.*

*Keo Leasing Co.,* 1984 OK 24, ¶ 4, 681 P.2d 757, 759. Properly treated, Miller's motion is a motion for new trial pursuant to 12 O.S.2001 § 653. Viewed as a motion for new trial, Miller's motion also extended the time from which he could appeal the summary judgment order. 12 O.S. Supp.2004 § 990.2(A).

■ ¶ 11 Consequently, Miller is entitled to appellate review of both the Trial Court's summary judgment order and its denial of his motion for new trial. The standard of review applicable to each is, however, different. In *Reeds v. Walker,* the Court explained:

> A trial court's denial of a motion for new trial is reviewed for abuse of discretion. Where, as here, our assessment of the trial court's exercise of discretion in denying defendants a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our *de novo* review of the summary adjudication's correctness.

2006 OK 43 at ¶ 9, 157 P.3d at 107 (footnotes omitted).

## DISCUSSION

¶ 12 The material facts regarding two issues in this case are disputed and preclude summary judgment. The first relates to Miller's claim that Liberty Mutual breached its duty of good faith and fair dealing when it made a "low ball" offer to settle his initial claim. The second relates to whether the statute of limitations bars that claim.

### I. Bad Faith

■ ¶ 13 An insurer has an implied duty to deal fairly and act in good faith with its insured so as not to deprive the insured of the benefits of the policy. *Christian v. Am. Home Assurance Co.,* 1977 OK 141, 577 P.2d 899. This duty applies to all types of insurance, including UM coverage. *See McCorkle v. Great Atlantic Ins. Co.,* 1981 OK 128, ¶ 27, 637 P.2d 583, 587. In *McCorkle,* the Court

explained that the essence of an action for breach of this implied duty "is the insurer's unreasonable, bad faith conduct, including the unjustified withholding of payment due under a policy." *Id.* at ¶ 21, 637 P.2d at 587.

¶ 14 The tort of bad faith does not foreclose the insurer's right to deny a claim, resist payment or litigate any claim to which the insurer has a legitimate defense. *Buzzard v. Farmers Ins. Co.*, 1991 OK 127, ¶ 13, 824 P.2d 1105, 1109. Indeed, Oklahoma law recognizes that there may be disputes between the insurer and the insured regarding a variety of matters, including cause and amount of loss. *Manis v. Hartford Fire Ins. Co.*, 1984 OK 25, ¶ 7, 681 P.2d 760, 761 (citing *Christian* and *McCorkle*). However, "if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *Badillo v. Mid–Century Ins. Co.*, 2005 OK 48, ¶ 28, 121 P.3d 1080, 1093 (quoting *McCorkle*, 1981 OK 128 at ¶ 21, 637 P.2d at 587).

¶ 15 Liberty Mutual's summary judgment motion asserted as an undisputed fact that its investigation of Miller's supplemental claim for medical expenses was properly conducted and that it was reasonable for it to deny coverage for injuries its medical expert concluded were not caused by the 1999 injury. Miller's response identifies Liberty Mutual's initial handling of his claim, which led to the $10,000 settlement offer, as the basis for the alleged bad faith, rather than the subsequent handling of his supplemental claim, which was the subject of Liberty Mutual's motion.[2] In its response to Miller's motion for new trial, Liberty Mutual argued that the facts on which Miller relied for his bad faith claim were in dispute. That response, therefore, concedes the inappropriateness of summary judgment regarding that

claim as it is now characterized by Miller. That claim, as described in Miller's submissions, contains two aspects. First, Miller contends that Liberty Mutual breached the duty of good faith and fair dealing by offering less than the amount it determined to be the value of his case. Second, Miller contends that Liberty Mutual breached this duty by intending to make the actual payment of the amount offered contingent on a release of future liability.

¶ 16 Liberty Mutual had the duty to promptly settle Miller's initial claim "for the value or within the range assigned to the claim as a result of its investigation." *Newport v. USAA*, 2000 OK 59, ¶ 16, 11 P.3d 190, 196. The Court in *Newport* explained that the duty of good faith and fair dealing "prevents an insurer from offering less than what its own investigation reveals to be the claim's value." *Id.*, 11 P.3d at 197. The Court stated:

> [A]n offer to make an insufficient payment is equivalent to a denial of that portion of the claim lying between the insurer's offer and the value or range of value which the insurer has assigned to the claim. Offers below the insurer's own calculation of the value of the claim are not a valid justification for withholding payment.

*Id.* at ¶ 17, 11 P.3d at 197. *Newport*, therefore, supports the first aspect and does not preclude the second aspect of the bad faith claim Miller articulates.

¶ 17 This Court finds that Miller's bad faith claim, based on Liberty Mutual's initial handling of his UM claim leading to the $10,000 settlement offer, cannot be resolved by summary judgment. A form entitled "Evaluation & Negotiation Worksheet" from Liberty Mutual's claim file is included in the record and arguably shows that Liberty Mutual omitted or ignored different elements of Miller's damages when it offered

---

2. Although it may have been reasonable for Liberty Mutual to assume that denial of the subsequent request for medical benefits was the basis for Miller's bad faith claim, it is now clear that Miller also based his claim on the alleged "low ball" offer made to resolve his initial claim. Prior to this appeal, Miller dismissed any claim related to his subsequent request for medical benefits.

him only $10,000 to settle his claim. The worksheet contains sections for itemizing "economic/special damages," such as medical expenses and earnings loss, and "non-economic/general damages," such as pain and suffering, scarring and permanency of injury. The worksheet listed Miller's "total economic damages" as $6,363 [3] and placed three different values on his general damages, a "low value" of $10,000, a "high value" of $25,000 and a "likely value" of $20,000. Another section of the worksheet lists the "total case value," with a "low value" of $15,963 (which should be $16,363 as per the handwritten correction), a "high value" of $30,963 and a "likely value" of $25,000. Despite this, Liberty Mutual noted on its worksheet that the "Planned First Offer" to Miller would be $10,000. This amount represented only the "low value" amount of Miller's general damages, without consideration of his documented special damages to date.[4] In addition, correspondence between Miller's counsel and Liberty Mutual indicated that Miller would be seeking further medical treatment beyond that documented on the worksheet.

¶ 18 In its reply brief in the Trial Court, Liberty Mutual also argued that *Newport's* holding and standard of conduct are "not relevant" to Miller's bad faith claim because mandate in the case was not issued until "after the claim was submitted, and only weeks before the evaluation was completed." Mandate issued in *Newport* on September 15, 2000. Liberty Mutual completed its evaluation and negotiation worksheet on October 11, 2000, and offered to settle Miller's UM claim for $10,000 on or about October 19, 2000. Miller declined the offer through his attorney, and negotiations continued, with Liberty Mutual offering $15,000 (still below its "low value" of $16,363) on January 16, 2001. Liberty Mutual subsequently offered to settle Miller's UM claim on February 2,

2001, for $20,963, asserting in its correspondence to Miller's attorney that the amount represented "the full value of the case," despite the fact that it had determined several months earlier the claim's "high value" to be $30,963 and the "likely value" to be $25,000. In a follow-up letter dated February 26, 2001, Liberty Mutual advised Miller's attorney that "there will be no re-evaluations or additional payments made on this claim."

¶ 19 While the timing of the *Newport* decision may be relevant to Miller's claim for punitive damages, Liberty Mutual has failed to demonstrate that the legal principles announced in the *Newport* decision are inapplicable to this case as a matter of law. And, viewing the inferences and conclusions that could be drawn from the evidentiary materials in the light most favorable to Miller, this Court concludes that reasonable persons might differ on whether Liberty Mutual acted reasonably when it withheld payment of the lowest amount it determined to be due to Miller.

## II. Statute of Limitations

¶ 20 In its reply to Miller's response to its motion for summary judgment, Liberty Mutual argued that any bad faith claim based on Miller's initial request for UM benefits was barred by the statute of limitations. The Trial Court did not permit Miller to respond to this argument; however, the issue was raised in his motion for new trial. Miller's argument that Liberty Mutual waived the statute of limitations is not well founded. Title 12 O.S.2001 § 2008(C) provides that a party "shall set forth affirmatively" a statute of limitations defense "[i]n pleading to a preceding pleading." The record clearly shows that Liberty Mutual asserted its statute of limitations defense in its answer to the last pleading filed by Miller, the Third Amended

---

**3.** The original sum was printed on the form as $5,963, but was corrected by hand and changed to $6,363 to reflect omission of a $400 charge for Miller's chiropractic treatment.

**4.** "The knowledge and belief of the insurer during the time period the claim is being reviewed is

the focus of a bad faith claim." *Buzzard*, 1991 OK 127 at ¶ 14, 824 P.2d at 1109. "An insurer is entitled to have any dispute concurring [*sic*] the reasonableness of its actions settled by a jury." *Newport*, 2000 OK 59 at ¶ 11, 11 P.3d at 195.

Petition. Miller cites no case holding that the assertion of an affirmative defense in a subsequent answer is not permitted if it was not included in the first answer filed by Liberty Mutual. Consequently, Liberty Mutual did not waive its statute of limitations defense.

¶ 21 It is undisputed that the applicable limitations period is two years, 12 O.S.2001 § 95(3), and that Miller filed his bad faith claim more than two years after his initial claim was resolved. Nonetheless, summary judgment based on application of the statute of limitations is precluded in this case. As Miller correctly argues, the discovery rule applies to the two-year statute applicable to bad faith claims. *Funnell v. Jones*, 1985 OK 73, ¶ 6, 737 P.2d 105, 107. The period of time a statute of limitations is tolled pursuant to the discovery rule is generally a question of fact. *Samuel Roberts Noble Found., Inc. v. Vick*, 1992 OK 140, ¶ 30, 840 P.2d 619, 626. To toll the limitations period beyond the filing of his bad faith claim, Miller must prove facts that support his claim that he did not discover and could not have discovered Liberty Mutual's "low ball" offer until he received responses to his discovery requests in this case. Liberty Mutual's dispute of the facts on which Miller relies for his tolling argument precludes summary judgment on the basis of this record. *See Lee v. Phillips & Lomax Agency, Inc.*, 2000 OK 65, ¶ 10, 11 P.3d 632, 635.

### III. Punitive Damages

¶ 22 Although we have concluded that disputed material facts exist regarding the issue of bad faith, the Oklahoma Supreme Court has explained that punitive damages are not justified in every case where the issue of bad faith is present. *McLaughlin v. Nat'l Benefit Life Ins. Co.*, 1988 OK 41, 772 P.2d 383. In *Badillo*, the Court discussed the minimum level of culpability necessary to warrant a punitive damages recovery against an insurer for breach of the duty of good faith and fair dealing. The Court stated:

Under [23 O.S. Supp.2004 § ] 9.1, for punitive damages to be allowed there **must** be evidence, **at a minimum,** of reckless disregard toward another's rights from which malice and evil intent may be inferred.... Whether that showing has been made remains an issue of law for the trial court in its role as gatekeeper to determine, upon a defendant's challenge to the sufficiency of the evidence via a motion for directed verdict, whether there is competent evidence upon which a reasonable jury could find reckless disregard, from which malice and evil intent may be inferred.

*Badillo*, 2005 OK 48 at ¶ 66, 121 P.3d at 1106.

¶ 23 The Trial Court did not consider whether punitive damages are available to Miller, having determined that Liberty Mutual was entitled to judgment as a matter of law on Miller's claim for bad faith. This Court, consequently, will not examine that issue. "It is not the duty of the appellate court on review to make first-instance determinations of disputed law or fact issues." *Evers v. FSF Overlake Assocs.*, 2003 OK 53, ¶ 18, 77 P.3d 581, 587 (citing *Bivins v. State ex rel. Oklahoma Mem'l Hosp.*, 1996 OK 5, 917 P.2d 456). It is for the Trial Court, when appropriate, and the jury to first determine the punitive damages issue if Miller prevails on his bad faith claim.

### CONCLUSION

¶ 24 Because disputed issues of material fact exist as to Miller's bad faith claim and his claim that the applicable statute of limitations was tolled, summary judgment was not proper. Consequently, it was error to deny Miller's motion for new trial. Therefore, we reverse the order granting summary judgment and the order denying Miller's motion for new trial and remand the case for further proceedings consistent with this Opinion.

¶ 25 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

GOODMAN, P.J., and WISEMAN, J., concur.